UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**CHARLENE CONNORS,**                   )
                                        )
       Petitioner,             )
                                        )
       v.                      )   Civil Action No.
                                        )   14-14569-FDS
**MASSACHUSETTS PAROLE BOARD,**         )
                                        )
       Respondent.             )
_____ )

## MEMORANDUM AND ORDER
## ON PETITION FOR HABEAS CORPUS

**SAYLOR, J.**

    This is an action by a state prisoner, currently on parole, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Charlene Connors was convicted in Middlesex County Superior Court on five counts of fiduciary embezzlement under Mass. Gen. Laws ch. 266, § 57. She was sentenced to concurrent terms of three to six years in state prison on two counts, and a concurrent ten-year term of probation on and after her prison sentence on the remaining three counts. The Massachusetts Appeals Court affirmed her conviction and the Supreme Judicial Court then denied her application for leave to obtain further appellate review ("ALOFAR").

    Connors has filed a petition for habeas relief, contending that her conviction was obtained in violation of her Fourteenth Amendment right to due process and her Sixth Amendment right to trial by jury on the grounds of insufficient evidence and improper jury instructions. Respondent Massachusetts Parole Board has opposed her petition, contending that

Connors has not demonstrated that the result of the decision was contrary to, or an unreasonable application of, Supreme Court case law. For the following reasons, the petition will be denied.

**I.      Background**

      **A.      Factual Background**

Connors and a co-defendant, building contractor Peter DeGennaro, were engaged in the construction and improvement of residential homes through various business entities. *Commonwealth v. DeGennaro*, 84 Mass. App. Ct. 420, 421 (2013). DeGennaro held himself out as the president and manager of three companies associated with such projects. *Id.* at 422. Connors served as the bookkeeper for all three companies, as well as the co-manager of one and a signatory for the bank accounts of the other two. *Id.*

The transactions that gave rise to Connors's conviction involved arrangements with two different home purchasers. *See id.* at 422-25. Each customer provided a deposit check to DeGennaro to go toward the construction of a new home, as well as additional advance payments pursuant to purchase and sale agreements presented to the purchasers by DeGennaro. *See id.* The purchase and sale agreements indicated that the payments would be held in escrow. *See id.*

Rather than placing the money into a certified escrow account, DeGennaro deposited the checks into checking accounts maintained by two of his three business entities. *See id.* Connors had access to both accounts, and evidence established that she managed the finances and paperwork of DeGennaro's multiple entities. *See id.* at 424, 434. During the period that construction was supposed to be taking place, DeGennaro and Connors depleted the two accounts by writing multiple checks payable to "themselves, 'cash,' other business entities, and other individuals." *Id.* at 424. In both cases, the promised construction was never performed and the deposits were not returned. *See id.*

### B. State Court Proceedings

On June 17, 2010, a Superior Court jury found both DeGennaro and Connors guilty of five counts of fiduciary embezzlement under Mass. Gen. Laws ch. 266, § 57, one for each of the deposits received from the home purchasers. *See id.* at 425. The Commonwealth contended that the purchase and sale agreements presented to both parties established DeGennaro as a fiduciary within the meaning of the statute in that he became "an express trustee created by an 'instrument in writing,' or 'any person upon whom or to whom such a trust has developed or come.'" *Id.* at 428 (quoting Mass. Gen. Laws ch. 266, § 57). Connors was prosecuted and convicted as a joint venturer actively participating in the misappropriation of the deposited funds. *DeGennaro*, 84 Mass. App. Ct. at 434.

In March 2013, Connors appealed her conviction to the Massachusetts Appeals Court. Her appeal raised four claims: "(1) that the statute is inapplicable to the [charged transactions]; (2) that the evidence could not establish her as a trustee of those customers' deposits; (3) that the judge's instructions wrongly excluded the requirement of an intention of permanent deprivation; and (4) that the instructions trespassed into fact finding . . . ." *Id.* at 434. Connors explicitly contended that the trial judge's instructions to the jury violated (1) her Fourteenth Amendment right to due process, because the instruction relieved the Commonwealth of its burden to prove every essential element beyond a reasonable doubt, and (2) her Sixth Amendment right to trial by jury, by usurping the jury's role as fact-finder. *See* Def. Br. on Appeal from Middlesex Div. of the Superior Court Dept. at 34-35, *Commonwealth v. DeGennaro*, 84 Mass. App. Ct. 420 (2013). She argued that her rights were violated when the trial judge instructed the jury that DeGennaro was, in fact, acting as an agent in his relationship to the purchasers, and that the first element would be met if the jury found he was acting as an agent. *See id.*

### C. Procedural Background

Connors filed the present petition on December 18, 2014. On March 27, 2015, the Commonwealth moved to dismiss the petition on the grounds that Connors had not exhausted her state law remedies. On April 14, 2015, the Court denied that motion. The parties then filed briefs on the merits.

## II. Claims for Relief

Connors's claims for relief can be reduced to two basic contentions: (1) insufficiency of evidence and (2) improper jury instructions.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has elaborated upon and explained this standard. "[A] state-court decision can be 'contrary to' [the Supreme Court's] clearly established precedent in two ways: First, . . . if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

### A. Sufficiency of the Evidence

Connors first contends that the Commonwealth did not provide sufficient evidence to the jury to establish her mental state for the alleged crime. "Embezzlement requires a fraudulent intent." *Commonwealth v. Schmukler*, 22 Mass. App. Ct. 432, 434 (1986). In order to prove the

fraudulent intent required for an embezzlement charge, the Government must prove "specific intent to gain some undue advantage . . . by an act or acts which [defendant] took knowing them to be wrongful and in violation of an affirmative duty." *Commonwealth v. Garrity*, 43 Mass. App. Ct. 349, 357-58 (1986).  Connors cites this standard in her brief, contending that knowledge of wrongdoing is an essential element of the charge and that the Commonwealth did not sufficiently prove that she *knew* she was participating in an embezzlement.  Specifically, she contends that the Commonwealth produced no evidence that she was actually aware that the funds she withdrew from the commercial bank account were supposed to be held in escrow.

With respect to claims of insufficient evidence, Massachusetts state courts apply a standard substantially identical to the standard promulgated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *See id.* at 319.  In Massachusetts, courts are directed to consider whether "the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged."  *Linton v. Saba*, 2016 WL 386225, at *4 (1st Cir. Feb. 1, 2016) (quoting *Commonwealth v. Lao*, 443 Mass. 770, 779 (2005)).  Accordingly, in order to prevail on her petition, Connors must demonstrate that the evidence, when viewed in the light most favorable to the Commonwealth, was insufficient to persuade a rational jury beyond a reasonable doubt that she knowingly participated in the embezzlement.

That standard is high, and the petition here does not meet it.  Among other things, the

record demonstrates that Connors was the "bookkeeper" of DeGennaro's operations; that Connors wrote checks from DeGennaro's business accounts; and that Connors was at least in the vicinity of the conversation in which DeGennaro told the Ghafaris that he was placing their money in escrow. *See DeGennaro*, 84 Mass. App. Ct. at 422. From that evidence, a rational jury could have found beyond a reasonable doubt that Connors knowingly participated in the embezzlement. She has not demonstrated that the decision reached by the jury and affirmed by the appellate court contradicted clearly established Supreme Court case law. Therefore, she is not entitled to habeas relief on her insufficiency of evidence claim.

**B.     Jury Instructions**

Connors's second ground for relief is that the jury instructions were improper. She argues in her petition that the trial judge "usurped the jury's fact-finding role and relieved the Commonwealth of its burden to prove every element beyond a reasonable doubt in violation of Due Process." Pet'r. Br. 18. She contends that the judge improperly made findings of fact for the jury in delivering the instructions and that in explaining what an "agent," "fiduciary," and "escrow" are, the judge concluded for the jury that Mr. DeGennaro was an agent and a fiduciary and that the funds were held in escrow. She contends that these conclusions should have been left up to the jury to determine and were, therefore, improper.

The Commonwealth, citing *Niziolek v. Ashe*, 692 F.2d 282, 290 (1st Cir. 1982), contends that "the general rule is that 'improper jury instructions will not form the basis for federal habeas corpus relief.'" Resp. Br. 13. The Commonwealth further contends that "examining the instruction as a whole, the [appellate court] recognized that the 'nature of the charged offense was law-laden' and that the judge had a duty to guide the jury through various legal terms and concepts; this the trial court did without invading the jury's fact-finding role." Resp. Br. 16. In

other words, the Commonwealth contends that the judge's explanation of terms like "agent," "fiduciary," and "escrow" was intended to guide the jury through the law and not to guide the jury to factual conclusions. Finally, the Commonwealth contends that Connors "falls short of proving that the charge 'so infected the entire trial that the resulting conviction violates due process,'" *see Estelle v. McGuire*, 502 U.S. 62, 72 (1991), and that Connors has not proved "that the [appellate court]'s conclusion that the instructions were an appropriate adaptation to conform to the evidence at hand was contrary to, or an unreasonable application of, clearly established Supreme Court law." Resp. Br. 18.

Habeas corpus relief for claims of improper jury instructions under state law is available, but only in limited circumstances: when the improper instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)); *Niland v. Hall*, 280 F.3d 6, 10 (1st Cir. 2002).

Here, in explaining the term "fiduciary," the judge instructed as follows:

> A fiduciary is a person who's required to act for the benefit of another person—in other words, in this case, it would be Mr. and Ms. Ghafari and Ms. Daly . . . . [B]y calling himself an agent, which is a fiduciary, the defendant DeGennaro created a relationship with Mr. and Ms. Ghafari and Ms. Daly. So in determining whether the Commonwealth has proven that Mr. DeGennaro was a fiduciary . . . [t]he title itself doesn't determine the relationship.

Supplemental Answer 1104-14. The judge further instructed:

> [I]n this case, the purchase and sale agreement as to each one of the phrases—it says 'Sun Castles Realty Incorporated, as agent.' And you know from the evidence the Mr. DeGennaro admits that he is Sun Castles Realty. And . . . there's articles of incorporation that you'll have which shows he's the president, the treasurer, the secretary and the director."

*Id.* These passages and other similar instructions were certainly inartful, and raise a legitimate issue as to whether the judge stated conclusions of fact in explaining the legal principles to the jury.

Jury instructions, however, "must be considered in the context of the instructions as a whole . . . ." *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147). Here, the trial judge instructed the jury that it was their responsibility to determine whether the Commonwealth had proved each element of the alleged crime beyond a reasonable doubt. For example, the judge stated, "[T]he Commonwealth must prove beyond a reasonable doubt that a defendant was a fiduciary during the relevant period." Supplemental Answer 1104-14. The judge also clarified for the jury that "if at any time during the course of telling you about the law I refer to any facts, I'm doing it solely to illustrate a point of law and for no other reason." *Id.*

The question then becomes whether these allegedly improper instructions "so infected the entire trial that the resulting conviction violate[d] due process." *Estelle*, 502 U.S. at 72. It certainly seems that the trial judge's instructions were, at the very least, on the border between law and fact. Several of the judge's statements could be construed as if they were matters of fact, which arguably usurps the role of the jury. It does not appear, however, that those instructions, taken in context, reached the level set by *Estelle*. The explanatory instruction given by the court substantially ameliorates any issue that the jury might have erroneously believed that the judge was instructing them how to find an issue of fact.

Connors cites other Supreme Court case law in an attempt to establish that the improper jury instructions contradicted clearly established federal law. She cites *United States v. Gaudin*, 515 U.S. 506, 509-14 (1995) for the proposition that juries in criminal trials are responsible for determining each element of the alleged crime, and *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993), for the proposition that the judge "may not direct a verdict for the State, no matter how overwhelming the evidence." *See* Pet'r. Br. 19. However, "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *Gaudin*, 515 U.S.

at 513.  Connors has not proffered sufficient evidence to show that the allegedly improper jury instructions stripped the jury of its ability to determine an element of the crime or that they directed the jury toward a verdict for the State.  The arguments, therefore, do not meet the threshold in *Estelle*, *Gaudin*, or *Sullivan*.  Thus, Connors has not demonstrated that the decision in her case contradicts clearly established Federal law as interpreted by the Supreme Court, and she is not entitled to habeas relief on this point.

**III.**     **Conclusion**

For the foregoing reasons, petitioner Charlene Connors's claim for habeas corpus relief under 28 U.S.C. § 2254(d) is DENIED.

**So Ordered.**

|  |  |
|---|---|
| Dated: April 25, 2016 | /s/  F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |